IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL E. CUNNINGHAM**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 2:07cv1615 |
| ) | **Electronic Filing** |
| **ENTERPRISE RENT-A-CAR** ) | |
| **COMPANY** and **ENTERPRISE** ) | |
| **RENT-A-CAR COMPANY OF** ) | |
| **PITTSBURGH**, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION

March 1, 2010

**I.   INTRODUCTION**

Plaintiff, Michael E. Cunningham ("Cunningham" or "Plaintiff"), filed a complaint against Defendants, Enterprise Rent-A-Car Company ("Enterprise") and Enterprise Rent-A-Car Company of Pittsburgh ("Enterprise Pittsburgh")(collectively"Defendants"), alleging: (1) violation of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 *et seq.*, (2) retaliation under the ADA; (3) violation of his rights under Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, and the Civil Rights Act of 1991 ("Title VII"), 42 U.S.C. §2000e-1, *et seq.* the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. § 621, *et seq.*, and (4) a Title VII claim based upon a theory of reverse gender discrimination. Plaintiff's claims arise out the termination of his employment by Enterprise Pittsburgh. Defendants have filed a motion for summary judgment, Plaintiff has responded and the motion is now before the Court.

Defendants have filed a Concise Statement of Material Facts in support of their motion for summary judgment. Many of Plaintiff's responses to Defendants' statement of facts, however, are inappropriate. The Local Rules of the United States District Court for the Western District of Pennsylvania require that Plaintiff file a responsive "concise statement which responds to each numbered paragraph in the moving party's Concise Statement of Material Facts by . . . admitting

or denying whether each fact contained [therein] . . . is undisputed and/or material . . . setting forth the basis for the denial if any fact . . . is not admitted in its entirety (as to whether it is undisputed or material), with appropriate reference to the record . . ." *See* LR 56.1(C)(1)(a) & (b). In many instances, Plaintiff "objects" to the materiality of the statement of fact without denying or admitting the factual averment. Moreover, Plaintiff's responses include editorials and improper argument that are irrelevant to, and/or outside the scope of, the specific factual statement. In addition, several of Plaintiff's citations to the record do not support either his denial, objection or editorial. Material facts set forth in a moving party's concise statement of material facts will be deemed admitted for the purpose of deciding the motion for summary judgment "unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." *See* LR 56.1(E).

## II. STATEMENT OF THE CASE

Enterprise Pittsburgh, a wholly owned subsidiary of Enterprise[1], is a Pennsylvania Corporation involved in the rental, sale and leasing of automobiles and trucks in the western Pennsylvania area. Defendants' Concise Statement of Material Facts ("Def. CSMF") ¶¶ 1 & 4. In September of 1989, Plaintiff became employed as a City Rental Manager for Enterprise Pittsburgh. Def. CSMF ¶ 5. As City Rental Manager, Plaintiff was initially responsible for Enterprise Pittsburgh's daily rental business. Def. CSMF ¶ 6. During Plaintiff's employment with Enterprise Pittsburgh, daily rentals made up the largest segment of its business and accounted for the majority the revenues. Def. CSMF ¶ 7.

At the time of his termination, Plaintiff held the position of Group Rental Manager for Enterprise Pittsburgh. Def. CSMF ¶ 25. Plaintiff reported to Timothy E. Nettles ("Nettles"), President and General Manager of Enterprise Pittsburgh. Def. CSMF ¶ 26. Nettles is in charge of

---

[1] Enterprise is a Missouri Corporation headquartered in St. Louis, Missouri, and does business in western Pennsylvania solely through Enterprise Pittsburgh. Def. CSMF ¶¶ 3 & 4.

the overall operations of Enterprise Pittsburgh and occupies the highest level of management within the company. Def. CSMF ¶ 27[2]. As Group Rental Manager, Plaintiff was within the second highest level of management at Enterprise Pittsburgh, was responsible for managing the daily rental business, and was accountable for the overall performance of over thirty (30) of Enterprise Pittsburgh's branch offices. Def. CSMF ¶¶ 29 & 30[3]. Plaintiff agrees that his position required the exercise of sound judgment and discretion in carrying out his duties. Plaintiff's Response to Concise Statement of Material Facts ("Pl. RCSMF") ¶ 33.

On November 18, 2006, Enterprise Pittsburgh sponsored a holiday party at the Westin Convention Center Hotel in Pittsburgh (the "Westin"). Def. CSMF ¶ 73. Prior to the holiday party, Nettles sent an e-mail dated November 15, 2006, to supervisory employees including Plaintiff, setting forth his expectations regarding employee conduct at the party. Def. CSMF ¶ 74; Pretrial Stipulation ¶ 15. Plaintiff received the e-mail which stated, *inter alia*, that the party was a "business function, and everyone is expected to conduct themselves accordingly." *Id.*

Plaintiff and his wife arrived by taxi cab at the Westin for the party at approximately 6:00 p.m. on November 18, 2006. Def. CSMF ¶ 83. Upon arrival at the party, Plaintiff and his wife were given registration packets which contained three (3) drink tickets for each of them. Def.

---

[2]   Plaintiff denies this statement in part though he stipulated to this exact statement at Paragraph 8 of the Pretrial Stipulation. Specifically, Plaintiff denies that Nettles "is exclusive (sic) or the only individual who would be involved in the termination or discipline [of] Mr. Cunningham. . . . there is more than sufficient evidence that Mr. Nettles consulted with corporate representatives relating to the decision to terminate or discipline Mr. Cunningham." (Citing Nettles' Deposition 199:4-201:5). The Court has read the cited portion of Nettles' deposition and can find nothing that even remotely speaks to Plaintiff's contention that Nettles consulted with corporate representatives relating to the decision to terminate or discipline Cunningham.

[3]   Again, despite the fact that Plaintiff has stipulated to the factual averment set forth in Paragraph 29 of Defendants' Concise Statement of Material Facts (*see* Paragraph 9 of the Pretrial Stipulation), he denies the fact "as stated." Plaintiff then recites a nearly incomprehensible explanation regarding level 3 and level 4 managers that is not supported by his citation to the record. Plaintiff has stipulated to Paragraph 30 of Defendants' Concise Statement of Material Facts (*see* Paragraph 10 of the Pretrial Stipulation), but objects to the materiality of the factual statement.

CSMF ¶ 84.  Alcoholic beverages required one (1) drink ticket, while nonalcoholic drinks were one-half of a ticket.  Pretrial Stip. ¶ 16.  Plaintiff admits that he obtained additional drink tickets from Karan Koch ( now Karan Miller, hereinafter "Miller"), an employee of Enterprise Pittsburgh who was distributing the tickets at registration, and from employees Darrin Wissinger and Rush Line.  Cunningham Deposition pp. 195-196.

At some time that evening, Plaintiff and his wife went to the bar at the Original Fish Market, a restaurant located adjacent to the Westin Convention Center. Cunningham Depo. P. 204.  While at the bar, it is alleged that Plaintiff chased Jennifer Wertz ("Wertz"), another Enterprise Pittsburgh employee, and poured beer down the front of her dress. Wertz Deposition p. pp. 11-13; Affidavit of Karan Miller ¶ 12.

Later that same evening, Plaintiff was involved in an argument with a taxi driver after the driver mistakenly began driving Plaintiff and his wife to Edgewood instead of Nevillewood, and then returned the Cunninghams to the Westin.  Def. CSMF ¶¶ 93, 94, 95 & 97.  Plaintiff admits that when he returned to the Westin he was extremely angry with the cab driver and swore at him. Def. CSMF ¶ 101.  The incident was witnessed by several Enterprise Pittsburgh employees, two of which attempted to intervene and remove Plaintiff from the situation, but Plaintiff threw their arms off of him.  Def. CSMF ¶¶ 100, 103-106; Cunningham Deposition pp. 212, 218-219.  Another taxi cab arrived, Plaintiff and his wife got in the cab and went home.  Def. CSMF ¶ 100, 110; Cunningham Deposition pp. 212.

On November 20, 2006, the Monday following the holiday party, Nettles was informed of Plaintiff's conduct at the Westin by several employees. Def. CSMF ¶¶ 117, 118 &119.  Dan Friedman ("Friedman") another Enterprise Pittsburgh Group Rental Manager, detailed Plaintiff's incident with the taxi driver for Nettles, and gave a written account of the events. Def. CSMF ¶ 120; Friedman Affidavit ¶¶ 18 & 19; Exhibit A to Friedman Affidavit; Nettles Deposition pp. 187-188.  Friedman indicated to Nettles that he thought Plaintiff's conduct was "bad" and that such conduct was a terminable offense. Def. CSMF ¶¶ 121, 122; Nettles Deposition pp. 188-189.

Nettles attempted to call Plaintiff, but Plaintiff was hunting. Def. CSMF ¶ 123.  Nettles asked Trisha Lansberry ("Lansberry"), Enterprise Pittsburgh's Human Resources Manager, to gather additional information to substantiate the initial reports regarding Plaintiff's conduct on the evening of November 18, 2006. Def. CSMF ¶ 124.  Several of the witnesses contacted by Lansberry reported that Plaintiff engaged in shocking and outrageous conduct toward the taxi cab driver, including yelling obscenities at him.  Def. CSMF ¶ 126 (citing several affidavits).

On November 21, 2006, Nettles had a telephone conversation with Plaintiff regarding Plaintiff's behavior after the holiday party on November 18, 2006. Def. CSMF ¶¶ 135-138.  One day after his conversation with Nettles, Plaintiff sent Nettles an e-mail stating: "After talking to my family and friends we have come to the conclusion I have a drinking problem and will seek help. I have called the help line and will follow their instructions." Def. CSMF ¶ 146.  Plaintiff, however, did not call Magellan Health Services ("Magellan"), the company that administers Enterprise Pittsburgh's employee assistance program, until after his e-mail to Nettles.  Def. CSMF ¶¶ 148-149.  Plaintiff spoke with a Magellan counselor, who made a written record of the call, indicating that he became intoxicated and acted out at the company's holiday party. Def. CSMF ¶¶ 150-151.  The Magellan counselor recommended that Plaintiff be evaluated face to face, but Plaintiff declined to receive any services.  Def. CSMF ¶ 153.

On December 1, 2006, Plaintiff met with Nettles, Lansberry and David Litzau, a Enterprise Pittsburgh Controller.  Def. CSMF ¶ 171.  At the meeting, Nettles terminated Plaintiff's employment with Enterprise Pittsburgh because of his behavior during the evening of November 18, 2006.  Def. CSMF ¶¶ 171 & 172.

### III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P 56(c), summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, issues of fact in dispute must be both genuine and

material, i.e., one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues, and if there are, whether they are both genuine and material. *Id.* The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland*, 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. V. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587. With respect to summary judgment in discrimination cases, the court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff. *Revis v. Slocomb Indus.*, 814 F. Supp. 1209, 1215 (D. Del.1993) (quoting *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987)).

IV.   DISCUSSION

The Third Circuit has held that disparate treatment discrimination cases under the ADA are governed by the same standards applicable to Title VII actions. *See, e..g., Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000); *Walton v. Mental Health Ass'n of Southeastern Pa.*, 168 F.3d

661, 667-68 (3d Cir. 1999). A plaintiff may elect to present either direct or indirect evidence to prove a claim of unlawful discrimination. *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 976 (3d Cir. 1998). Plaintiff makes no contention and/or argument that his claims are based on direct evidence of a discriminatory animus by the employer's decision-maker.

Plaintiff's claims under the ADA and the ADEA, therefore, will follow the familiar burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The plaintiff-employee bears the initial burden of proving a *prima facie* case of discrimination. *Id.* Establishment of the *prima facie* case raises a presumption of unlawful discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). A defendant can overcome that presumption by introducing admissible evidence of non-discriminatory reasons for its actions. *St. Mary's*, 509 U.S. at 507 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55, (1981)). The defendant has only the burden of production, however; it need not prove that its stated reasons "actually motivated its behavior . . . ." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).

If the defendant meets its burden, the plaintiff must then "show by a preponderance of the evidence that the employer's explanation [for its actions] is pretextual (thus meeting the plaintiff's burden of persuasion)." *Id.* Plaintiff does not have to prove that an "illegitimate" motive was the sole reason for the employer's decision; he need only prove that it was a determinative factor in his termination. *Fuentes v. Perskie*, 32 F.3d at 764 (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993)).

To survive summary judgment at the third stage of the *McDonnell Douglas* analysis, the plaintiff must present sufficient evidence to allow a factfinder to conclude that the employer's non-discriminatory reason was a post hoc fabrication, or pretext. *Id.* "[T]he plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the

employer's action." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644 (3d Cir. 1998).

> [T]he plaintiff cannot simply show that the employer's decision was wrong or mistaken . . . Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence" and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons."

*Fuentes v. Perskie*, 32 F.3d at 765 (internal citations omitted).

    A.    <u>Plaintiff's Claim Under the ADA</u>

The ADA makes it unlawful, *inter alia*, for an employer to discriminate "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  In order to establish a *prima facie* case of discrimination under the ADA, plaintiff must demonstrate that: (1) he is a "qualified individual with a disability" under the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an adverse employment decision as a result of discrimination. *Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)(citing *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996)).

The ADA defines disability as "(a) a physical or mental impairment that substantially limits one or more major life activities; (b) a record of such impairment; or (c) being regarded as having such an impairment." 42 U.S.C. § 12102(2).  The term "major life activity" refers to "those activities that are of central importance to daily life." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002); *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 381 n.1 (3d Cir. 2002); *Marinelli v. City of Erie*, 216 F.3d 354, 359 (3d Cir. 2000).  The ADA does not define "major life activity," but the Equal Employment Opportunity Commission (EEOC) regulations define "major life activities" as "functions such as caring for oneself, performing manual tasks,

walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); *see also Emory v. AstraZeneca Pharms. LP*, 401 F.3d 174, 180 n.4 (3d Cir. 2005) (deferring to definitions of terms used in the ADA as articulated in EEOC regulations).

Plaintiff does not claim he is disabled, he specifically contends he is not an alcoholic, *see* Pretrial Stipulation ¶ 22, and bases his claim on the contention that he was regarded as disabled by his employer, Enterprise Pittsburgh. Under the ADA, a person is regarded as impaired when he: "(1) [h]as a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation; (2) [h]as a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) [h]as none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment." 29 C.F.R. § 1630.2(l). Because Plaintiff agrees that he has no impairment as defined by 29 C.F.R. § 1630.2(h), in order to succeed on his claim that he is "regarded as" disabled, he must show that his employer treated him "as having a substantially limiting impairment. " 29 C.F.R. § 1630.2(l)(3).

The analysis must focus not on Plaintiff and his actual abilities, "but rather on the reactions and perceptions of the persons interacting or working with him." *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996). Therefore, Plaintiff must demonstrate either: (1) that despite having no impairment at all, Enterprise Pittsburgh erroneously believed that he had an impairment that substantially limited one or more of his major life activities; or (2) that Plaintiff had a non-limiting impairment that Enterprise Pittsburgh mistakenly believed substantially limited one or more of his major life activities[4]. *See Eshelman v. Agere Sys.*, 554 F.3d 426, 434 (3d Cir. Pa. 2009)(citations omitted).

The relevant inquiry, then, is whether Defendants perceived Plaintiff as disabled within

---

[4]   The definition of "substantially limits" remains the same as it does in other parts of the statute. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999).

the meaning of the ADA, not whether Plaintiff was actually disabled at the time he was terminated from his employment. *Id.*  Therefore, Plaintiff must establish that Defendants believed he was substantially limited in a "major life activity." *Sutton v. United Air Lines, Inc.*, 527 U.S. at 490-491.  In this instance, Plaintiff has failed to direct this Court to any evidence from which a jury could reasonably conclude that Enterprise Pittsburgh perceived that he was substantially limited in a major life activity.  Moreover, Plaintiff has made no argument regarding Defendants' perception that he was limited in a major life activity, he merely sets forth the "regarded as" definition under the ADA, and concludes he has established a *prima facie* case of discrimination under the ADA. Clearly, Plaintiff has failed to establish that  he is a "qualified individual with a disability" under the ADA.  Having failed to establish a *prima facie* case of discrimination under the ADA, judgment will be granted for Defendants and against Plaintiff on his disability discrimination claim.

Because Plaintiff has failed to establish that he was disabled or that Enterprise Pittsburgh regarded him as disabled, his failure to accommodate claim also fails.  In order for a plaintiff to establish a *prima facie* failure to accommodate case under the ADA, he must demonstrate that: (1) he had a disability; (2) the employer had notice of this disability; (3) he can perform the essential functions of his position with a reasonable accommodation; and (4) the employer failed to provide a reasonable accommodation. *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387, n. 11 (4th Cir. 2001); *Tish v. Magee-Women's Hosp.*, 2008 U.S. Dist. LEXIS 87010, 17-18 (W.D. Pa. Oct. 27, 2008); *Johnson v. McGraw-Hill Cos.*, 451 F. Supp. 2d 681, 701 (W.D. Pa. 2006).  Plaintiff's failure to accommodate case under the ADA shall be dismissed.

   B.  <u>Retaliation Under the ADA</u>

The ADA's anti-retaliation provision states:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a). To state a *prima facie* case of retaliation under the ADA a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's action. *Fogleman v. Mercy Hosp.*, 283 F.3d 561, 567-568 (3d Cir. 2002); *Dismore v. Seaford Sch. Dist.*, 532 F. Supp. 2d 656, 665 (D. Del. 2008).

Having found that Plaintiff was neither disabled nor regarded as disabled, Plaintiff has no cause of action under the ADA's anti-retaliation provision. Moreover, the Court can find no evidence that he engaged in protected activity or that there is a causal connection between his alleged protected activity and his termination.

There is no evidence that Plaintiff requested a reasonable accommodation for a disability or a perceived disability. After he spoke with Nettles regarding his misconduct on the evening of the holiday party, Plaintiff spoke with a Magellan counselor but refused the counselor's recommendation that Plaintiff be evaluated face to face. Plaintiff also declined to receive any services. Moreover, Plaintiff does not contend his e-mail to Nettles about getting help or his contact with Magellan were requests for an accommodation. He does contend, however, that his e-mail to Lansberry requesting Enterprise Pittsburgh's "alcoholism protocol," purportedly at the suggestion of the "help line", was a request for accommodation. Pretrial Stipulation ¶ 24; Cunningham Depo. pp. 267-268; Deposition Exhibit 22. Based on Plaintiff's conduct and his deposition testimony, such "requests" were shams intended only to obfuscate the issue regarding his outrageous behavior at a company function that threatened his employment.

Having failed to establish a *prima facie* case under the anti-retaliation provision of the ADA, Plaintiff's retaliation claim shall be dismissed.

C.      Plaintiff's Age and Reverse Gender Discrimination Claims

There is no need to do an in depth analysis of either claim. Even if Plaintiff could establish a *prima facie* case of discrimination under either theory, there is absolutely no evidence

in this record that would allow a jury to find that the Defendants' stated reasons for terminating Plaintiff's employment are pretextual.

To establish a *prima facie* case of age discrimination, Plaintiff must show by a preponderance of the evidence, that: (1) he is over 40 years old; (2) he is qualified for the position in question; (3) he suffered from an adverse employment decision; and (4) his replacement was sufficiently younger to permit an inference of age discrimination. *Showalter v. University of Pittsburgh Med. Ctr.*, 190 F.3d 231, 234 (3d Cir. 1999); *Connors v. Chrysler Financial Corp.*, 160 F.3d 971, 973-974 (3d Cir. 1998). Assuming for the purpose of this motion that Plaintiff has established that he was replaced by a sufficiently younger person, which is a considerable stretch, the Court finds that the Defendants have produced evidence of a legitimate nondiscriminatory reason for the adverse employment action. Plaintiff, therefore, must demonstrate that Defendants' articulated reason was not the actual reason, but rather a pretext for discrimination.

To show pretext, Plaintiff must point to some evidence from which a fact finder could reasonably either:

(1)    disbelieve Defendants' articulated legitimate reasons; or

(2)    believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of Plaintiff's termination.

*Fuentes v. Perskie,* 32 F.3d at 764.

To discredit the proffered reason, however, Plaintiff cannot simply show that Defendants' decision was wrong or mistaken.  The factual dispute at issue is whether Defendants were motivated by a discriminatory animus, not whether they were wise, shrewd, prudent, or competent. *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531, 533 (3d Cir. 1992); *Villanueva v. Wellesley College*, 930 F.2d 124, 131 (1st Cir.), *cert. denied*, 502 U.S. 861 (1991).  Instead, Plaintiff must present evidence demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies (sic), or contradictions" in Defendants' reasoning that one could reasonably conclude such reasons are incredible and unworthy of credence, and

ultimately infer that Defendants did not act for the asserted nondiscriminatory reasons. *Fuentes v. Perskie*, 32 F.3d at 765; *see also Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 638 (3d Cir. 1993)(holding that the proper inquiry is whether the plaintiff has proffered sufficient evidence of "inconsistencies and implausibilities in the employer's proffered reasons"). Plaintiff has failed to direct this Court to any evidence in the record from which it could infer that Defendants' articulated reasons for his termination were implausible, incredible or unworthy of credence.

Under the second prong of the test, to show that discrimination was more likely than not a cause for the Defendants' action, Plaintiff must point to evidence with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that age was a motivating or determinative factor in the decision to terminate his employment. *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1111 (3d Cir. 1997). "Determinative Factor" means that if not for Plaintiff's age, he would not have been terminated. Plaintiff has fallen woefully short in his attempt to establish that Defendants' were motivated by a discriminatory animus in terminating his employment.

To establish a claim for sex discrimination under Title VII, Plaintiff must establish that: (1) he is a member of a protected class; (2) he is qualified for the position sought; (3) he was rejected for the position; and (4) that the employer filled the position with a similarly situated person from a different class. *Menta v. Cmty. College*, 428 F. Supp. 2d 365, 372 (W.D. Pa. 2006). Again, even if Plaintiff could establish a *prima facie* case for reverse discrimination, he is unable to show that Defendants' reason for his termination was a pretext for unlawful termination. Plaintiff's age and reverse discrimination claims must be dismissed.

Because this Court finds that Defendants' motion for summary judgment succeeds on the merits, there is no need to address Enterprise's motion to dismiss for lack of personal jurisdiction.

### V. CONCLUSION

The Court finds that there are no material facts in dispute, and Plaintiff Cunningham is unable to show that his termination was unlawful based upon discrimination under the ADA, ADEA or under a theory of reverse gender discrimination. Accordingly, Defendants' motion for summary judgment shall be granted. An appropriate order will follow.

s/ David Stewart Cercone<br>
David Stewart Cercone<br>
United States District Judge

cc:  David M. Huntley, Esquire
Jonathan H. Ferguson, Esquire
Jones, Gregg, Creehan & Gerace
411 Seventh Avenue
Suite 1200
Pittsburgh, PA 15219

Patrick L. Abramowich, Esquire
Melissa M. McCoy, Esquire
Fox Rothschild LLP
625 Liberty Avenue, 29th Floor
Pittsburgh, PA 15222-3115